MURPHY, Circuit Judge,
concurring.
I agree with the majority that this case is controlled by our previous opinion in Bell v. Pfizer, Inc., 716 F.3d 1087 (8th Cir.2013). I also agree that we cannot consider Fullington’s argument that the brand manufacturers were “designers” of the generic drug because it was not raised in the district court. See Dobrovolny v. Moore, 126 F.3d 1111, 1114 n. 2 (8th Cir.1997). If properly presented, however, such a claim may have merit given recent developments in the Supreme Court’s prescription drug liability jurisprudence.
The overwhelming majority of courts which have considered whether brand manufacturers could be held liable for harms caused by their generic counterparts have answered in the negative. These cases have generally been predicated on the assumption that the generic manufacturers could independently safeguard and strengthen their own labels. See, e.g., Foster v. Am. Home Prods. Corp., 29 F.3d 165, 170 (4th Cir.1994); Mensing v. Wyeth, Inc., 588 F.3d 603, 612-14 (8th Cir.2009), rev’d in part on other grounds sub nom., PLIVA, Inc. v. Mens- *748 ing, — U.S. -, 131 S.Ct. 2567, 180 L.Ed.2d 580 (2011). Since the brand and generic manufacturers were assumed to have separate duties to ensure their labels and warnings were adequate, there was no reason for the brand manufacturers to foresee that generic consumers would rely on representations made on the brand drug’s label. Foster, 29 F.3d at 170. Consequently we observed in Mensing that the brand manufacturers did not owe a duty of care to generic customers because these manufacturers “intended to communicate with their customers, not the customers of their competitors.” 588 F.3d at 613 n. 9.
The Supreme Court’s decisions in Mensing and Mutual Pharmaceutical Co. v. Bartlett, - U.S. -, 133 S.Ct. 2466, 186 L.Ed.2d 607 (2013), severely eroded the foundation of this analysis. These cases stripped any discretionary authority from the generic manufacturers to ensure the safety of their products or the adequacy of their labels, instead placing the burden entirely on the brand manufacturers. See Mensing, 131 S.Ct. at 2574. The privileged position accorded to the brand manufacturers may alter their state law relationship to the generic drugs whose composition and labeling they control, since at this point such a manufacturer is “the party that actually controls the manufacturing and labeling of the product in question.” Fields v. Wyeth, Inc., 613 F.Supp.2d 1056, 1061 (W.D.Ark.2009). With the brand manufacturers solely responsible for the content and updating of a generic’s labels, it can no longer be credibly argued that communications regarding the risks of their product are not also directed at consumers of the generic bioequivalents.[7]
With these observations, I join m the majority opinion.

. That is particularly apparent in this case, as Fullington's doctor prescribed Reglan, which was then substituted with generic metoclo-pramide by her pharmacist.