JANE B. STRANCH, Circuit Judge,
concurring in part and dissenting in part.
Before this panel comes another of the developing line of pharmaceutical cases in which a grievous harm is found to be without remedy for a large subset of the injured. The universal explanation for finding such a remediless wrong is that existing law drives these cases into the proverbial box canyon of precedent from which there is no hope of escape. I do not agree that case precedent consigns this group of plaintiffs to such an inequitable result. Accordingly, I respectfully concur in part and dissent in part from the majority opinion.
In the cases before us, plaintiffs’ physicians prescribed generic metoclopramide for stomach distress. After taking the drug for more than twelve weeks, the plaintiffs developed an irreversible, incurable, life-altering neurological disorder called tardive dyskinesia. This disorder causes involuntary and rhythmic muscle movements, such as chewing, grimacing and frowning, eye blinking, lip puckering, and tongue rolling. See United States v. Grigsby, 712 F.3d 964, 966 n. 1 (6th Cir. 2013). Evidence indicates that the manufacturers of generic metoclopramide and the brand-name drug Reglan knew that tardive dyskinesia occurs with much greater frequency than they warned about on their product labels. Now that the dam *408 age has been done, must the plaintiffs alone bear the burden of the harm they have suffered? The majority opinion says they must bear this burden alone because the law does not permit plaintiffs to pursue any state-law tort remedies against the generic or brand-name manufacturers.
I cannot agree that recent changes in the law leave plaintiffs such as those before us with absolutely no remedy to redress their harm. While these plaintiffs may not be- able to press all of their causes of action against the generic manufacturers, they should be permitted to pursue the failure-to-conform claim against them. As to the brand manufacturers, moreover, there exists a potentially viable path to recovery.
A. Generic drug manufacturers
I address the generic drug manufacturers first because the law concerning them is more settled, at least at the present time. Unfortunately I find myself compelled to join that portion of the majority’s decision holding that plaintiffs cannot, under current law, bring design-defect or failure-to-warn claims against generic drug manufacturers because such claims are preempted by the Federal Food, Drug, and Cosmetic Act (FDCA), 21 U.S.C. §§ 301-399f. See Mut. Pharm. Co. v. Bartlett, — U.S.-, 133 S.Ct. 2466, 186 L.Ed.2d 607 (2013); PLTVA, Inc. v. Mensing, — U.S. -, 131 S.Ct. 2567, 180 L.Ed.2d 580 (2011). In both Mensing and Bartlett the Supreme Court adopted the position of the Food and Drug Administration (FDA) at that time that a generic drug manufacturer may not use the federal “changes-being-effected” (CBE) regulation to act independently of the brand-name manufacturer to strengthen a warning label so that known risks are adequately disclosed to medical providers and patients. See Bartlett, 133 S.Ct. at 2476; Mensing, 131 S.Ct. at 2575 (citing U.S. Brief at 15-16; 21 U.S.C. § 355(j)(4)(G); 21 C.F.R. §§ 314.94(a)(8)(iii), 314.150(b)(10)). Although state tort laws place “a duty directly on all drug manufacturers to adequately and safely label their products[,]” the CBE regulation as interpreted by the FDA prevents generic manufacturers from complying with federal law and state law relating to failure-to-warn and design-defect claims at the same time. Mensing, 131 S.Ct. at 2577. As a result, state tort law is preempted by federal law, leaving the plaintiffs without state-law tort remedies for these types of claims. Id.; Bartlett, 133 S.Ct. at 2476-77.
This analysis “strips generic-drug consumers of compensation when they are injured by inadequate warnings” even though “Congress would [not] have intended to pre-empt state law in these cases.” Mensing, 131 S.Ct. at 2592 (Sotomayor, J., dissenting). Regrettably,. Mensing and Bartlett prevent the plaintiffs from pursuing their failure-to-warn and design-defect claims against the manufacturers of generic metoclopramide, a medication that caused them permanent, debilitating harm. I follow Mensing and Bartlett because I am bound to apply Supreme Court law. My views on the liability of generic drug manufacturers on failure-to-warn and design-defect claims, however, coincide with those of the well-reasoned dissents in Mensing, 131 S.Ct. at 2582-93, and Bartlett, 133 S.Ct. at 2480-96.
Mensing and Bartlett, moreover, do not seal the doorway to all claims. In Fulgenzi v. PLIVA Inc., 711 F.3d 578, 584-85 (6th Cir.2013), this court permitted a failure-to-conform claim to proceed against a generic drug manufacturer of metoclo-pramide where the plaintiff alleged that the generic manufacturer did not update its label beginning in 2004 to match the label of the brand-name drug, Reglan, and *409 the plaintiff specifically alleged the time periods during which she ingested the drug. The majority invokes Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), to reject the failure-to-conform claim alleged against generic manufacturers in this case solely on the basis that the plaintiffs failed to allege facts specifying when they ingested metoclopramide. Because Fulgenzi issued in 2013 after the filing of the Amended Complaint in this case in 2011, I would grant the plaintiffs one additional opportunity to amend their complaint to specify more precisely the dates they ingested metoclopramide, thereby drawing the link between their use of the drug during a time period when the generic manufacturers failed to conform their labels to the label of the brandname drug, Reglan. Accordingly, I dissent from subsection II.B.4. of the majority opinion, but otherwise I concur in sections II.A and II.B.
B. Brand-name drug manufacturers
Turning to the brand-name drug manufacturers, I further part ways with my colleagues. Brand-name drug manufacturers stand in a far different posture than generic drug manufacturers. Plaintiffs injured by brand-náme prescription drugs retain state-law tort remedies against the manufacturers of those drugs. See Wyeth v. Levine, 555 U.S. 555, 129 S.Ct. 1187, 173 L.Ed.2d 51 (2009). Proper application of federal and Tennessee law does not absolve brand-name drug manufacturers of all responsibility for the plaintiffs’ harm simply because the plaintiffs ingested generic metoclopramide and not brand-name Reglan. The plaintiffs’ state-law causes of action against the brand-name drug manufacturers are based on the lack of an adequate warning by the entity responsible for providing that warning. For the reasons explained below, I respectfully dissent from subsection II. C. of the majority opinion.
In Wyeth, the plaintiff suffered an arm amputation following an injection of Phen-ergan, a drug that was administered to curb her nausea from a migraine headache. Id. at 558-59, 129 S.Ct. 1187. She alleged that Phenergan’s warning label was defective because it did not instruct medical clinicians to use the IV-drip method of intravenous administration rather than the higher-risk IV-push method. Id. at 560, 129 S.Ct. 1187. “More broadly, she alleged that Phenergan is not reasonably safe for intravenous administration because the foreseeable risks of gangrene and loss of limb are great-in relation to the drug’s therapeutic benefits.” Id.
Wyeth asserted that Levine’s claims were preempted because Wyeth could not possibly comply simultaneously with the duties imposed upon it by state tort laws and federal labeling laws. Id. at 568, 129 S.Ct. 1187. This argument was comprised of several components.
First, Wyeth contended that the CBE regulation was not implicated in the case because a 2008 amendment allowed a manufacturer to change its label only to reflect newly acquired information. Id. Because Levine had not pointed to any new information about the risks of the IV-push method of drug administration, Wyeth asserted that it could not fulfill its state-law duty to -provide a stronger warning about that' method of drug administration without violating federal law. Id. at 568-69, 129 S.Ct. 1187. The Supreme Court disagreed, pointing out that Wyeth could have revised the Phenergan label even under the 2008 amendment because “newly acquired information” includes “new analyses of previously submitted data.” Id. at 569, 129 S.Ct. 1187 (internal quotation marks omitted). ‘Wyeth could have analyzed the *410 accumulating data” on the frequency of amputations and “added a stronger warning about IV-push administration of the drug.” Id. at 569-70, 129 S.Ct. 1187.
The same is true in this case. The brand manufacturers could have analyzed the accumulating data on the frequency of tardive dyskinesia and added a stronger warning on the Reglan label without waiting for the FDA to approve a supplemental application.
The brand manufacturer also argued in Wyeth that, if it had added a stronger warning without first obtaining the FDA’s approval, it would have violated federal laws on misbranding and unauthorized distribution of its drug. Id. at 570, 129 S.Ct. 1187. These arguments were not persuasive to the Court because strengthening the warning would not make Phenergan a “new drug” distributed without FDA authorization nor would such a warning mis-brand the drug. Id. “[B]ecause'the statute contemplates that federal juries will resolve most misbranding claims,” the Court explained, “the FDA’s belief that a drug is misbranded is not conclusive.” Id.
The same reasoning applies here. Strengthening the warning label would not make Reglan a new drug distributed without FDA authorization, nor would it mis-brand the drug. And because “[fjederal law does not dictate the text of each generic drug’s label, but rather ties those labels to their brand-name counterparts,” Mens-ing, 131 S.Ct. at 2578, generic manufacturers have a duty to replicate the strengthened brand-name label to intensify the warnings on their own labels for metoclo-pramide. See Fulgenzi, 711 F.3d at 584.
The brand-name manufacturer cannot shift the duty to warn to the FDA. The Supreme Court made this clear in Wyeth when it stated that it is a “central premise of federal drug regulation that the manufacturer bears responsibility for the content of its label at all times.” Wyeth, 555 U.S. at 570-71, 129 S.Ct. 1187. The manufacturer must produce an adequate drug label initially and then ensure that the warnings on the label remain adequate throughout the time the drug is marketed. Id. at 571, 129 S.Ct. 1187. Prior to 2007, the FDA did not have authority to order manufacturers to revise their labels, but “[w]hen Congress granted the FDA this authority, it reaffirmed the manufacturer’s obligations and referred specifically to the CBE regulation, which both reflects the manufacturer’s ultimate responsibility for its label and provides a mechanism for adding safety information to the label prior to FDA approval.” Id. at 571, 129 S.Ct. 1187. Thé FDA can reject labeling changes made under the CBE regulation, “[b]ut absent clear evidence that the FDA would not have approved a change to Phenergan’s label,” the Supreme Court declined to “conclude that it was impossible for Wyeth to comply with both federal and state requirements.” Id.
The same principles apply here. The responsibility to draft a warning label that is accurate at the time the product is issued and remains adequate during the entire time the product is on the market lies solely with the brand-name manufacturer, not the FDA.
Finally, in Wyeth the brand-name manufacturer argued that the purposes and objectives of federal drug labeling regulation would be obstructed if Wyeth had to comply with a state-law-fluty to provide a stronger warning. Id. at 573, 129 S.Ct. 1187. Once the FDA approves a drug’s label, Wyeth posited, a state court jury “may not deem the label inadequate, regardless of whether there is any evidence that the FDA has considered the stronger warning at issue.” Id. at 573-74, 129 S.Ct. 1187. The Supreme Court rejected this contention because it relied on an “untena *411 ble interpretation of congressional intent and an overbroad view of an agency’s power to pre-empt state law.” Id. at 573, 129 S.Ct. 1187. The “most glaring problem” with the argument, the Supreme Court said, was “that all evidence of Congress’ purposes is to the contrary.” Id. at 574, 129 S.Ct. 1187. “Congress did not provide a federal remedy for consumers harmed by unsafe or ineffective drugs” because it evidently “determined that widely available state rights of action provided appropriate relief for injured consumers.” IcL State-law tort claims remain intact because if “Congress thought state-law suits posed an obstacle to its objectives, it surely would have enacted an express pre-emption provision at some point during the FDCA’s 70-year history.” Id. Because Congress has not adopted an express preemption provision for prescription drugs, “[i]ts silence on the issue, coupled with its certain awareness of the prevalence of state tort litigation, is powerful evidence that Congress did not intend FDA oversight to be the exclusive means of ensuring drug safety and effectiveness.” Id. at 574-75, 129 S.Ct. 1187.
In declining to preempt state-law tort claims against brand-name drug manufacturers, the Supreme Court refused to defer to the FDA’s “newfound opinion,” first expressed in 2006, that state law frustrates the agency’s implementation of the FDCA. Id. at 580, 129 S.Ct. 1187. The Court reasoned that a “complex and extensive” regulatory history “undercut the FDA’s recent pronouncements of pre-emption, as they reveal the longstanding coexistence of state and federal law and the FDA’s traditional recognition of state-law remedies — a recognition in place each time the agency reviewed Wyeth’s Phenergan label.” Id. at 580-81, 129 S.Ct. 1187 (internal quotation marks omitted). Likewise, the Court refused to give deference to the amicus brief of the United States because “the Government’s explanation of federal drug regulation departs markedly from the FDA’s understanding at all times relevant to this case.” Id. at 580 n. 13, 129 S.Ct. 1187. Unfortunately for the plaintiffs, however, two years later the Supreme Court fully deferred to the FDA’s “newfound opinion,” as again expressed in an amicus brief of the United States, and found the claims against a generic manufacturer subject to federal preemption. Mensing, 131 S.Ct. at 2574-76.
The upshot is that Wyeth, Mensing, and Bartlett draw a sharp distinction between brand-name and generic drug manufacturers. Injured plaintiffs can bring state-law tort claims against brand-name manufacturers. Wyeth, 555 U.S. at 581, 129 S.Ct. 1187. Injured plaintiffs may not bring certain state-law tort claims against generic manufacturers. Bartlett, 133 S.Ct. at 2476; Mensing, 131 S.Ct. at 2577. “It is beyond dispute that the federal statutes and regulations that apply to brand-name drug manufacturers are meaningfully different than those that apply to generic drug manufacturers.” Mensing, 131 S.Ct. at 2582.
Mensing’s acceptance of the FDA’s “newfound opinion” created a different landscape in pharmaceutical litigation. Brand-name drug manufacturers now stand in direct relationship with consumers who ingest generic drugs because only the brand-name manufacturers can control and change labeling to strengthen warnings about drug safety. Mensing and Bartlett “stripped any discretionary authority from the generic manufacturers to ensure the safety of their products or the adequacy of their labels, instead placing the burden entirely on the brand manufacturers.” Fullington v. Pfizer, Inc., 720 F.3d 739, 748 (8th Cir.2013) (Murphy, J., concurring). The “privileged position accorded to the brand manufacturers may alter *412 their state law relationship to the generic drugs whose composition and labeling they control, since at this point such a manufacturer is the party that actually controls the manufacturing and labeling of the product in question.” Id. (internal quotation marks omitted).
Concomitantly, it is now reasonably foreseeable to brand-name drug manufacturers that medical providers and consumers rely on brand-name labeling to warn them about risks inherent in the use of brand-name and generic medications. See Fulgenzi 711 F.3d at 586-88 (permitting failure-to-conform claim to proceed where plaintiff alleged that generic drug manufacturer failed to update its warning to match brand-name manufacturer’s new warning). Any defect or omission in the labeling for the brand-name drug will necessarily be repeated in the labeling for the generic drug, see id. at 581-82, causing reasonably foreseeable harm to a patient who ingests only the generic product. See Wyeth, Inc. v. Weeks, — So.3d -, -, 2013 WL 135753, at *15 (Ala. Jan. 11, 2013), argument granted, (June 13, 2013). Further, because Tennessee and all other states have laws requiring pharmacists to substitute less-expensive generic drugs for higher-priced brand-name drugs to lower health care costs, see Tenn.Code Ann. § 53-10-204; Mensing, 131 S.Ct. at 2583 (Sotomayor, J., dissenting), it is reasonably foreseeable to brand-name manufacturers that most prescriptions will be filled with a generic version of the drug prescribed, unless the physician insists that the patient receive the brand-name drug only. See Conte v. Wyeth, Inc., 168 Cal.App.4th 89, 85 Cal.Rptr.3d 299, 315 (2008).
In Tennessee, “[d]rug manufacturers have a duty to exercise ordinary and reasonable care not to expose the public to an unreasonable risk of harm from the use of their products.” Pittman v. Upjohn Co., 890 S.W.2d 425, 428 (Tenn.1994). Drug manufacturers, “like the manufacturers of any other unavoidably dangerous product, have a duty to market and distribute their products in a way that minimizes the risk or danger. They may discharge their duty by distributing the drugs with proper directions and adequate warnings to those who foreseeably could be injured by the use of their products.” Id. Drug manufacturers may reasonably rely on “learned intermediaries” such as physicians “to transmit their warnings and instructions” to patients, thereby potentially avoiding liability for failure to warn of known risks. But- “physicians can be learned intermediaries only when they have received adequate warnings” from the drug companies. Id. at 429.
A reasonable warning “conveys a fair indication of the dangers involved, but also warns with the degree of intensity required by the nature of the risk.” Id. Whether a drug manufacturer’s warning is adequate is a question of fact based on several factors, including whether the warning adequately indicates the scope of the danger and reasonably communicates the extent or seriousness of the harm that could result from misuse of the drug. Id. Other pertinent factors are whether the warning alerts a reasonably prudent person of the danger and the consequences that might result from failure to follow the warning, and whether the means to convey the warning is adequate. Id. The adequacy of a drug warning is a question of law only if the warning is accurate and unambiguous. Id. at 429-30.
The record evidence suggests that the brand-name drug manufacturers knew that the drug they created — metoclopram-ide by generic title and Reglan by brand-name — caused tardive dyskinesia to occur far more frequently, especially with long-term use of the drug, than was disclosed in *413 the labeling. Yet they failed to warn physicians or patients about this known incidence rate. Under the changed landscape created by Mensing and Bartlett, the duty to warn of these dangers of Reglan and generic metoclopramide rests with the brand manufacturers. Tennessee law defines the parameters of that duty to warn. I cannot agree with my colleagues that the duty to warn as assigned by these cases simply ceases to exist because the plaintiffs ingested generic metoclopramide and not brand-name Reglan where the same warning — crafted by the brand-name manufacturer — is required as to both. See Fulgenzi, 711 F.3d at 584 (finding no impossibility preemption because the generic manufacturer could — indeed was required to — comply with its federal duty to update its labeling to match the brand-name manufacturer’s labeling). The Tennessee Supreme Court has not yet had an opportunity to discuss Wyeth and Mensing in the context of a state-law claim that a brand-name drug manufacturer failed to warn consumers adequately about the dangers of its drug, a warning that federal law requires the generic manufacturer to replicate. See Fulgenzi, 711 F.3d at 584. Therefore, it is too early to speculate, as the majority does, about whether the Tennessee Supreme Court would limit the liability of brand-name manufacturers to injuries caused by their “products,” and not their “warnings.”
The majority opinion reaches the conclusion that the brand-name manufacturers can only be held liable if patients ingest brand-name Reglan by relying on our previous opinion in Smith v. Wyeth, Inc., 657 F.3d 42D (6th Cir.2011), decided under Kentucky products liability law. Smith included claims against the manufacturers of Reglan and the manufacturers of generic metoclopramide. The case was decided very shortly after Mensing, which included only a claim against the generic drug manufacturer. Smith followed Mensing to reject the claim against the maker of the generic drug' on federal preemption grounds. Id. at 423. Smith went further, however, and rejected .the claim against the brand-name manufacturer because adopting the plaintiffs’ “theory of liability would require the court to attribute any deficiency in a name-brand manufacturer’s labeling and marketing of its products to products manufactured by its generic competitors.” Id. Smith further stated: “The plaintiffs’ argument — that the name-brand defendants’ liability stems from the fact that the regulatory structure governing name-brand and generic drugs makes it foreseeable that patients and their physicians will rely on the name-brand.labels to use and prescribe generic drugs — has been rejected by all but one of the courts that have considered it.” Id. at 423-24. For this latter proposition, Smith cited the “leading case” of Foster v. American Home Products Corp., 29 F.3d 165 (4th Cir.1994), “in which the court held that the manufacturer of a name-brand drug has no duty to patients who ingested only a generic version of the drug manufactured by the name-brand drug company’s competitors.” Id. at 424.
This part of Foster rested on the Fourth Circuit’s understanding in 1994 that a generic, drug manufacturer could use the federal CBE regulation to strengthen its own product labeling, independently of the brand-name manufacturer. Foster, 29 F.3d at 169-70. With generic manufacturers in control of warning labels for their own products, courts understandably followed Foster to hold that brand-name drug manufacturers could not be held liable for injuries caused by generic medications. Some courts in other jurisdictions have continued to rely on Foster to hold that brand-name manufacturers of Reglan cannot be held liable for injury caused - by *414 metoclopramide manufactured by their generic competitors. See e.g., Schrock v. Wyeth, Inc., 727 F.3d 1273, 1284-85 (10th Cir.2013) (and cases cited therein); Guarino v. Wyeth, 719 F.3d 1245, 1252-53 (11th Cir.2013) (same).
' These courts, like our own in Smith and the majority here, fail to recognize that Foster’s foundation was “severely eroded” by the Supreme Court’s recent decisions in Mensing and Bartlett.[1] See Fullington, 720 F.3d at 748 (Murphy, J., concurring). Under Mensing and Bartlett, a generic manufacturer no longer retains independent control to strengthen its own label to disclose known risks of using the drug. The brand-name manufacturers' control the warning labels for their own and their generic competitors’ products. See Mens-ing, 131 S.Ct. at 2578. “With the brand manufacturers solely responsible for the content and updating of a generic’s labels, it can no longer be credibly argued that communications regarding the risks of their product are not also directed at consumers of the generic bioequivalents.” Fullington, 720 F.3d at 748 (Murphy, J., concurring).
The majority criticizes. my reliance on Judge Murphy’s concurrence in Fullington because in that case the Eighth Circuit affirmed a summary judgment in favor-of brand-name manufacturers, relying on Bell v. Pfizer, Inc., 716 F.3d 1087 (8th Cir. 2013). But Bell, too, rested on the disintegrating Foster analysis, see id. at 1092, and that is precisely the point Judge Murphy made in her Fullington concurrence and that I make here. The majority also adheres to Smith 6n the ground that one panel may not overrule the decision of another panel. I have no disagreement with that general proposition. The majority concedes, however, that an inconsistent Supreme Court opinion can require modification of our decision. See Salmi v. Sec’y of Health & Human Servs., 774 F.2d 685, 689 (6th Cir.1985). Thus so here — Mensing precluded the reliance we placed on Foster in the Smith decision. We should not now repeat the same mistake in our analysis of Tennessee law.
Consumers — who do not have the knowledge required to weigh the benefits of a medication against its risks — rely on the superior expertise of the manufacturer charged with the duty to provide label warnings. Those in need of medicine rightly expect that the manufacturer will disclose a medication’s potential to cause them physical harm. Thus, the plaintiffs’ state-law causes of action against the brand-name drug manufacturers are predicated on the lack of an adequate warning from the entity charged with providing that warning, not on whether the plaintiffs ingested Reglan or a generic competitor’s product. Once this distinction is realized and the flaw in reliance on Foster recognized, section II.C. of the majority’s analysis lacks sufficient grounding to deny the plaintiffs the right, to proceed on their state-law claims.
For all of these reasons, I would hold that the plaintiffs may pursue their state-law tort claims against the brand-name manufacturers and their Fulgenzi claim against the generic manufacturers. Accordingly, I dissent from the majority’s conclusions otherwise. I concur with the majority’s conclusion that plaintiffs cannot pursue other state-law tort claims against *415 generic drug manufacturers under the law as it presently exists.